### Nelson W. Clark vs. William Axford.

Where a supervisor is sued in trespass for the taking of personal property under a warrant for the collection of taxes, issued by him and attached to the tax-roll, evidence that he was at the time supervisor, and, as such, signed the warrant, does not of itself make out a prima facie justification.  To show that he had jurisdiction to impose the taxes and issue his warrant, he must prove that the assessment-roll had come to his hands from the board of supervisors, as provided by law, and that the various taxes had been certified to him for assessment by the competent authorities.  When his jurisdiction has been shown, his acts will be presumed regular and valid, till the contrary appears.

A supervisor is not liable in trespass, on account of any errors or defects in the description of real estate in the assessment-roll.  When the roll has come to him from the board of supervisors, properly certified, he has no right, unless from some defect which renders the whole roll void, to refuse to make out the tax-

CLARK *vs.* AXFORD.

roll and attach his warrant thereto. He is required to issue this warrant in general form; he can not notice or except individual cases, and the law will not compel him to respond in damages for an act which it compels him to perform.

*Heard May 19th and 20th. Decided June 5th.*

Error to Oakland Circuit.

The cause was originally commenced in a justice's court, and taken to the Circuit Court, by appeal.

The action was trespass for a span of horses. The defendant pleaded the general issue, and gave special notice that at the time of the trespass complained of, and for a long time previous, he was the supervisor of the township of Independence, in the county of Oakland, and, as such supervisor, made out a tax against the taxable property of said township, for the year 1851, including the property of said plaintiff, and issued a warrant thereon, and placed the same in the hands of Edwin G. Clark, the collector of said township for that year, and that the said horses were taken by said collector, under and by virtue of said warrant, and in pursuance of the command therein contained, for the purpose of being sold to satisfy the tax assessed against said plaintiff, he having refused to pay the same. On the trial of the cause in the Circuit Court, the plaintiff proved that the horses were taken from him, and sold at the time and place stated in the declaration, by said Edwin G. Clark, who claimed to be the collector of said township at the time, and claimed to have taken the horses by virtue of a tax-roll and warrant, then in his possession, for said year 1851. The warrant and tax-roll were produced, and were proved to be in the handwriting of said defendant, he having signed the same as supervisor of said township. The plaintiff then proved the value of the horses; and rested his case.

The defendant offered no testimony.

The Court refused to allow the plaintiff to argue his case to the jury, but told the jury that there was no evidence in the case, and directed them to find a verdict for the defendant, which they accordingly did; and judgment was rendered

in the cause in favor of the defendant, and against the plaintiff for costs of suit.

The plaintiff having excepted to the charge to the jury, brought the case to this Court by writ of error, for review on such exception.

*M. Wisner*, for plaintiff in error:

The plaintiff had made out a prima facie case when he had proved the taking of the property, and connected the defendant with it. And to constitute a justification, the facts necessary to give jurisdiction to the supervisor to levy the tax should have been proved.— 1 *Doug. Mich.* 384, 390; 2 *Cow. & Hill's Notes*, 1013; 1 *Ibid.* 487.

[The counsel further contended that the tax-roll was, as related to plaintiff, defective and void on its face, and that defendant therefore was liable in trespass for attaching his warrant thereto.]

In any view of the case, there was evidence to go to the jury, and plaintiff had a right to argue the case to the jury.

*G. V. N. Lothrop*, for defendant in error:

1. There were no disputed facts in the case in the Court below. A mere question of law was presented; and the jury, not being judges of the law, it could not properly be argued to them.

2. The evidence showed defendant to be supervisor, and that, as such, he attached his warrant to the roll. As supervisor, he had jurisdiction of the assessment of taxes on all the property on the roll, and it was his duty to annex his warrant thereto. His acts are *quasi* judicial, and, however irregular or erroneous, he is not liable to an action of trespass.— 5 *Mass.* 547; 5 *Pick.* 498; 7 *Barb.* 127; *Ibid.* 133; 1 *Denio*, 214; 3 *Denio*, 120; 11 *Wend.* 91; 19 *Barb.* 22; 21 *Barb.* 207; 2 *Comst.* 473.

3. Defendant was a public officer, acting in the due course

of his duty; and the law will, in his favor and for his protection, presume that in assessing the taxes he acted legally in all respects. It will presume that all the ·taxes levied were duly authorized, and that the plaintiff and his property were within his jurisdiction. And any fact relied on to impeach this presumption must be proven. — 2 *Comst.* 477; 2 *Cow. & Hill's Notes*, 296; 3 *Ibid.* 1092; 22 *Vt.* 838; 5 *Barb.* 609.

4. One of the errors assigned is, that the Circuit Judge told the jury that there was "no evidence in the case." By this was meant only that there was no evidence which showed any right of action. Evidence had been offered and received. It was undisputed. The question was not as to its *admissibility* or its *weight*, but, conceding as true what the evidence tended to prove, whether the plaintiff had any case. And the language of the judge must be construed by reference to the subject-matter of which he was speaking.

But even supposing the literal construction of the language of the judge to prevail, what then? If the propositions advanced above are correct, it is clear that the plaintiff had no right to recover. The ruling of the judge did not therefore prejudice him. And it is settled that a judgment will not be reversed for a wrong ruling, when it could work no prejudice to the party. — 9 *Cow.* 674; 3 *Hill,* 389; *Ibid.* 194; 14 *Ohio,* 502; 6 *Blackf.* 375.

Christiancy J.:

The main question in this case is, Whether the Court below erred in refusing to allow the plaintiff's counsel to argue the cause to the jury, and in charging the jury that there was no evidence in the cause; by which must be understood, no evidence upon which they could legally find a verdict for the plaintiff.

If the plaintiff had made a prima facie case when he rested, the defendant having offered no evidence, the Court erred; but if he had not made such a case, or if he had, in fact, made a prima· facie case for the defendant, then there was no error in the ruling of the Court.

CLARK vs. AXFORD.

The action being trespass for taking the plaintiff's property through the agency of the collector (treasurer), under a warrant issued by the defendant, who was supervisor, the proof of the taking by the collector, and that such taking was in obedience to the warrant, would, it is conceded, make a prima facie case for the plaintiff, and throw upon the defendant the burden of proving by what authority he issued the warrant; *unless*, from the plaintiff's own proof, sufficient appeared to show, prima facie, the right of the defendant to issue the warrant. In the latter alternative, the plaintiff had failed in making out, or had rebutted, his own prima facie case, and made one for the defendant; and, in such case, the ruling of the Court would be correct.

The first inquiry then is, Did the plaintiff, in the attempt to prove his own case, show the *jurisdiction* of the defendant, as supervisor, to issue the warrant in question? If so, the law itself raises the presumption that the supervisor had properly and legally performed his official duty, and the onus was thrown upon the plaintiff to prove the contrary. But, until jurisdiction be shown, no such presumption will be made; the facts necessary to give him jurisdiction can not be presumed.

This involves the inquiry, What facts constitute jurisdiction for these purposes; or what state of facts was necessary to give the supervisor the right to impose the taxes, and to issue his warrant for their collection? The plaintiff had shown, first, that the defendant was supervisor; and, second, he had shown a tax-roll, with the supervisor's warrant attached. But, did these facts, alone, show jurisdiction to impose taxes upon the property described in the roll, and to issue the warrant in question? The simple fact that defendant was supervisor would not give him the right to impose taxes of any kind. To illustrate this, suppose no State tax were required to be raised in any particular year, or that the board of supervisors have not determined to raise any county tax; could the supervisor go on and impose any such

tax, on his own authority, by virtue of his office? And a similar question may be asked as to any other species of tax. The answer is obvious. The law has not vested in the supervisor the right to impose any tax, except as previously required by some other competent authority. (The mill tax for school purposes provided by section 107, chapter 58, was the only tax fixed by the Legislature.) And, even when the proper authorities have determined upon the raising of the several taxes, he can not take, as his basis for their apportionment, any list or roll which has not been submitted to and acted upon by the board of supervisors, and corrected, if necessary, and equalized by them; and the evidence of their action must be certified by their chairman.

The roll which goes into the hands of the collector or treasurer, is but a copy of that which comes from the board, and is not required to contain the certificate of the chairman. — *R. S. of* 1846, *Chap.* 20, § 34. The production of the roll, therefore, as in this case, though in the handwriting of the supervisor, with a warrant thereto signed by him, can not, in an action against him, for the several reasons above stated, be treated as prima facie evidence of the existence of all the facts necessary to give him jurisdiction to impose the taxes mentioned in the roll. In an action against a justice of the peace for issuing an execution against a man's property, it is not enough for him to show that he was such justice, and then rely upon the execution and the judgment, unless it appear that the necessary proceedings have been taken to give him jurisdiction of the parties and the cause, or rightfully to call his official powers into action.

This is the rule as to all inferior jurisdictions. There is no hardship in the rule, in the present case; as the law has provided the supervisor with the means of showing the necessary facts, affirmatively, in the most direct and convenient form; while, if the rule were otherwise, the plaintiff would be put to the difficulty of proving a negative.

We think, therefore, to have shown the jurisdiction of

the supervisor, in this case, to impose the taxes, and to issue his warrant, he ought to have proved, in addition to what already appeared in the case, the following facts: *First,* That an assessment-roll had come to his hands from the board of supervisors, substantially as provided by section 26, chapter 20, of Revised Statutes, which, with the certificate of the chairman of the board, is to be filed in his office. *Second,* To authorize him to assess or impose State and county taxes, their amount for the township must have been apportioned by the board of supervisors, and certified to him by their clerk (*Chap.* 20, §§ 30 *and* 31); the township taxes must have been certified by the township clerk (§ 22, *same chapter*); the school district taxes by the district board (*Chap.* 58, § 56); and the highway taxes, by the overseers of highways for the respective road districts (*Chap.* 24, § 15); or, at least, these various taxes should have been shown to have been required by the competent authorities (and the law requires the proper certificates to be placed in his hands). Without these facts, the supervisor could have no more jurisdiction or authority to impose the taxes, or to issue his warrant, than any other man in his township.

The jurisdiction of the supervisor, therefore, not having been shown, and it appearing that he had issued his warrant for the collection of the tax, under which plaintiff's property was seized and sold, it is quite clear that the plaintiff had made a prima facie case, and that he was entitled to argue his case to the jury, and to recover the amount of damages proved, if the jury believed the evidence, which was wholly undisputed. The Court, therefore, erred in charging the jury that there was no evidence in the cause, and in directing them to find for the defendant.

As the judgment must be reversed, for this error, we might relieve ourselves from the consideration of the other questions involved in the case; but as one of these was elaborately discussed, and there is to be a new trial, on which it would again arise, and perhaps again find its way to this Court, we think it proper to notice it here.

Clark vs. Axford.

The first, and most important of these, and the only one which we shall notice here, is the question, Whether the supervisor is liable in trespass on account of any errors or defects in the description of real estate on the assessment-roll. By the law, as it existed in 1851, when the assessment-roll in this case must have been made, it was competent for the townships, at their option, to elect two assessors, who, with the supervisor, were to be the assessors for the year.—*R. S. Chap.* 16, § 8. Whether this was done in this township, is not disclosed by the case, nor is it important, except as showing very clearly the distinction between the acts of the supervisor in his character of *assessor*, and those which he performs in the capacity of *supervisor*.

The duties of the assessor, or assessors, whether there be one only or more of them, are pointed out specifically by the statute.— *Chap.* 20, §§ 13 *to* 21 *inclusive.* These duties relate only to the making of the roll, the description and valuation of property, &c., preparatory to the submission of the roll to the board of supervisors; and, upon the submission of the roll to that board, the duties and powers of the assessor, or assessors, cease. All the acts of the supervisor in reference to the roll, up to this time, whether acting with others or alone, are in his character and capacity of assessor, and not that of supervisor. But, upon the completion of the roll, it is to be certified under the hand of the assessor (or assessors), and it then goes into the hands of the board of supervisors, who are required to examine the assessment-rolls, and to equalize the relative value of the real estate in the several townships, and "*to make such alterations in the description of any lands upon such rolls as may be necessary to render such description conformable to the requirements of the law.*" — *Chap.* 20, § 25. When the board have performed these duties, they are required to attach to the roll a certificate, signed by their chairman, showing that their duty has been performed; and to deliver the roll, thus certified, to the supervisor of

the proper township, who is to file and keep the same in his office.—§ 26. It is this roll, thus certified, which furnishes the supervisor the only basis for assessing or imposing the various taxes which have been ordered and certified to him by the proper authorities. These he is to apportion and assess upon the persons and property mentioned in the roll, according to the amounts and valuations therein stated. And *here*, for the *first time, commence his duties as supervisor.* This roll he must take as it comes to his hands; he has no power to alter or amend it in any particular, but simply to make a copy, impose the taxes, attach his warrant, and deliver it to the treasurer for collection. "To such assessment-roll and tax-list, a warrant, under the hand of the supervisor, shall be annexed, commanding such treasurer to collect from the several persons named in said roll the several sums mentioned in the last column of such roll, opposite their respective names," &c.—§ 35.

It is apparent from these provisions that the entire action of the assessors, one or more, in reference to the descriptions of real estate, is only *initiatory*, and is *merged* in that of the board of supervisors, whose action gives authenticity and definite form to the roll in this respect. The supervisor therefore — so long as he acts in good faith, at least — can not be made responsible, in any form of action, for any defects of this kind existing in the roll when it comes to his hands from the board.

But it is contended by the plaintiff that the supervisor becomes responsible by attaching his warrant to a roll containing such erroneous and void descriptions, with taxes affixed to them, and commanding the collector to collect such taxes. Doubtless, if the entire roll be void, from this or any other cause apparent on its face, the supervisor might become thus liable for attaching his warrant and commanding the collection of the tax; but that the entire roll becomes void because part only of the descriptions of property are void on their face, or because some particular tax upon it is void

upon its face, though distinguishable from those which are good, is a proposition which can not be maintained. Such a doctrine has no foundation in law or common sense. Each item of property, and every distinct species of tax on the roll, so far as they can be distinctly and separately traced and defined, stand upon their separate and individual merits, and are not to be vitiated in any respect by others on the same roll which may be void, though taxed · to the same party, unless the good and bad are so mingled as to be incapable of distinct recognition.

The assessment of taxes is necessarily intrusted to a class of men unskilled in the laws and the construction of statutes. In many townships, the situation of property is such as to challenge the best legal talent to make a perfect description of every parcel of real estate, in the short space of time allowed for the completion of the roll. In many instances it would be impossible without actual survey: in others, without a thorough examination of title. Is the supervisor to be allowed to refuse to affix his warrant, and thereby prevent the collection of any taxes in his township for the whole year upon descriptions acknowledged to be good, because he finds other descriptions or items which do not conform to the law? Such a construction would check at once, and effectually, the entire administration of · the government, through every department, from the highest to the lowest. And it may well be doubted whether, under such a construction, a single township in the State would be able to enforce the collection of a dollar. The law itself contemplates the possibility, and even the probability, of many such errors, and provides for the rejection of the tax upon such erroneous description, by the Auditor General, for that reason, charging it back, for re-assessment. The sale of any tract erroneously described, would, of course, be void. But this does not authorize the supervisor to refuse his warrant for that, or any other cause not rendering the entire roll void. The supervisor can not notice or except *individual cases* — his warrant is required to

be *general.* The law compels him to issue his warrant in this general form, and it will not compel him to respond in damages for an act which it compels him to perform.

Any error appearing on the face of the roll is as apparent to the collector as to him. The acts of the collector are distributive in their character, operating separately upon individuals and distinct items; and though we give no opinion upon that point, as it is not before us, it may be that if any particular tax, or tax upon a particular item, clearly appear on the face of the roll to be void, the collector may refuse to enforce its collection; and he might be justified in returning that he was unable to collect it; though doubtless it would be his duty to receive it if voluntarily paid, as the law clearly permits any man honestly to pay his just share of the public burdens, without compulsion, though his property may be defectively described.

These considerations render it unnecessary to decide whether any of the descriptions of the plaintiff's property were void.

The other points raised and discussed on the argument are of less importance; and, as their consideration is not necessary to the disposition of the cause, and they may be presented in a clearer form when the cause shall be tried upon its merits, we shall not notice them here.

The judgment of the Circuit Court for the county of Oakland must be reversed, and a new trial ordered.

MARTIN Ch. J. and CAMPBELL J. concurred. MANNING J. did not sit in this cause, having been counsel for one of the parties.