The First National Bank of Sturgis v. William M. Watkins.

*Specific tax on national banks.* Act No. 122 of the Laws of 1867 (p. 163) providing for the levy and collection of a specific tax upon national banks, is unconstitutional. (*Smith v. First National Bank of Tecumseh, 17 Mich., 479.*)

*Illegal demands by public officers.* A payment to a public officer, in compliance with a demand accompanied by a threat of immediate and effectual enforcement, is in no sense a voluntary payment; and when the claim is unlawful, and made under color of office, an action lies for its recovery.

*Public officers: Principal and agent.* The relation of principal and agent does not exist between public officers in respect of acts which, although performed under color of office, are not authorized by law.

*Heard October 6. Decided October 11.*

Case made from St. Joseph Circuit.

This was an action of *assumpsit* brought by the First National Bank of Sturgis in the Circuit Court for the County of St. Joseph, against William M. Watkins. The facts, as agreed to by the parties, are stated in the record to be these:

"The plaintiff is a corporation, duly organized as a banking association, under the laws of the United States, and doing business in the State of Michigan.

"On the 30th day of June, A. D. 1868, a specific tax for the sum of $460 had been assessed by the Auditor General against said bank, under and by virtue of act No. 122 of the Session Laws of 1867, entitled 'An act to tax banking associations organized under the laws of the

United States,' approved March 27, 1867; and the said bank had refused for more than twenty days, to pay said tax.

"On the day last aforesaid, the said Auditor General issued a warrant, a copy of which is hereto annexed and made a part hereof, and delivered the same to the defendant, who then was Sheriff of St. Joseph County, in said state. On the 12th day of July, A. D. 1868, the said Sheriff called at the banking house of the said plaintiff, in the village of Sturgis, with said warrant, during banking hours, and notified John J. Buck, the cashier of said bank, and then and there in charge of the funds thereof, that he, the said Sheriff, had said warrant and should proceed to execute the same, unless the same was paid.

"The said cashier thereupon delivered to said Sheriff the amount required by said warrant, in lawful money, to wit: four hundred and sixty dollars, and forty-six dollars fees, and at the same time informed said Sheriff that the same "was done under protest," and that said bank reserved all their legal rights, "claiming that the tax was illegal." At the time the Sheriff called at said bank, as aforesaid, the vault was open, and the money of said bank, amounting to over fifty thousand dollars, was in sight of said Sheriff.

"The Sheriff, on the 22d of July, 1868, paid over said money to the State Treasurer and took his receipt therefor, less the fees aforesaid. The payment or delivery of said four hundred and sixty dollars, and said forty-six dollars fees, was made by said John J. Buck, cashier of said bank, to prevent a seizure of the property of said bank, by said defendant."

The cause was tried before the Circuit Judge without a jury, and the plaintiff recovered a judgment. It now comes before this Court upon a case made under the statute.

*W. L. Stoughton*, for plaintiff.

1. The Act of March 27, 1867, imposing a specific tax on national banks is in conflict with the laws of the United States, and therefore void.—*Smith v. Bank of Tecumseh, 17 Mich., 479.*

2. It necessarily follows that the warrant issued by the Auditor General gave the Sheriff no authority or jurisdiction. The rule that a ministerial officer executing a warrant issued by an officer having competent jurisdiction will be protected (*4 Mich., 291*) does not apply in this case. The warrant of the Auditor General was a *nullity*, and not available for any purpose.—*Mills v. Martin, 19 J. R., 33 ; Nichols v. Thomas, 4 Mass., 233 ; Com. v. Albro, 1 Gray, 45.*

3. This illegal tax was not voluntarily paid, but collected by *legal duress*, and may be recovered in an action for money had and received.—*2 Greenl. Ev., § 121 ; 1 Pars. on Con., 595, n. x. ; McDougal v. Brown, 16 Ills., 32 ; Harmony v. Bingham, 12 N. Y., 116 ; N. Y. & H. R. R. v. Marsh, 12 N. Y., 309 ; Wisner v. Bulkey, 15 Wend., 321 ; Joiner v. Egremont, 3 Cush., 567 ; Preston v. City of Boston, 12 Peck, 7 ; State v. Williams, 20 Law & Eq., 319.* In this case it is said, "Where money demanded and paid under an illegal demand, *colore officii*, the payment can never be voluntary." So, also, in *Faulkner v. Hunt, 16 Cal.*, it is said, "An illegal tax paid under protest may be received back. I do not claim that the protest gives any new right. It is only evidence that the payment was not voluntary.—*Story on Agency, § 300, Note 1 ; Bank of U. S. v. Bank of Washington, 6 Peters, 8.*

4. The action was properly brought against the officer, who compelled the payment under color of process, which was void.—*Ripley v. Gelston, 9 J. R., 201 ; Fry v. Lock-*

*wood, 4 Cow., 454; Mich. State Bank v. Hammond, 1 Doug., 530.* And his liability was not changed by passing the money over to the State Treasury.—*Story on Agency, § 301; Fry v. Lockwood,* above cited; *McDonald v. Brown,* above cited; *Townson v. Wilson, 1 Campb., 396.*

*Dwight May, Attorney General,* for defendant.

I. Where a party is compelled by duress of his person or goods to pay money for which he is not liable, it is not voluntary, but compulsory.—*Harmony v. Bingham, 12 N. Y., 116; Chase v. Dwinal, 7 Maine, 134; Shaw v. Wood-cock, 7 B. and C., 14; Ripley v. Gelston, 9 Johns., 201; Jayner v. Inhabitants, etc., 3 Cush., 567; Preston v. Boston, 12 Pick., 14.*

*a.* But where the owner is in possession of his goods, the threat of a distress of rent, or of any other legal process, is not such a duress, for a party may defend himself against such suit or proceedings.

*b.* Judge Shaw's opinion (in *12 Pick.*) is the key to all of the decisions in that state upon this question; and as we have no statute in this state authorizing a levy upon the person as well as the property for a tax, they can have but little weight as authority with us. To the same purport is the case in 3d of Cush. 567, relied upon by plaintiff.—*Mays v. Cincinnati, Ohio St., 268.*

In Illinois the court follows *Preston v. Boston.* The difference between the statutes of the two states is wide, yet the court seeks to avoid the variance by asserting that because the party paying the tax cannot bring replevin, he therefore has no day in court.—*Bradford v. Chicago, 25 Ill., 420.* Either trespass or trover would lie against the officer, which would seem to be a sufficient answer to this proposition. Whenever the same question occurs in Massachusetts,

not relating to the collection of a tax, the court holds a different doctrine.—*7 Cush., 131.*

In some decisions, it is made a rule of convenience, as when the property is in such a condition or in such kind as to be a great inconvenience and damage to the party to be without it. Such is the case of goods in bond. By long usage, the party pays the duty under protest and may sue for the money paid. This is authorized by U. S. statute.—*7 Wallace, 122.*

*c.* A duress exists where an alternative has been forced upon a party, which by its inherent force he is driven to evade by a payment of money.

II. Was the payment in this case voluntary ?

*a.* It is well settled that an action for money had and received, does not lie to recover back money paid by mistake of law, or where the same is voluntarily paid with a full knowledge of all the facts.—*Clark v. Dutcher, 9 Cowen, 674; Mowatt v. Wright, 1 Wend., 355; Waite v. Leggett, 8 Cowen., 195; Benson v. Monroe, 7 Cush., 125; Tyler v. Smith, 18 B. Monroe, 799; Woodburn v. Stout, 28 Ind., 77; Robinson v. City of Charleston, 2 Rich., 317.*

*b.* The facts in this case show that there was no duress —no coercion—no levy—the money was paid on demand. The payment under protest does not make it involuntary, it rather indicates that plaintiff then understood his legal rights, and knew that there was no obligation to pay.

III. Where money is paid to an agent for the purpose of being paid over to his principal, and is actually paid over, no suit will lie against the agent to recover it back. *Fry v. Lockwood, 4 Cowen, 456; Swift v. Poughkeepsie, 37 N. Y., 511.* The defendant paid the money over except his fees, without notice and before suit brought.

IV. But can the plaintiff maintain this action at all, even conceding that the money was paid under protest, as

claimed? 'Upon a state of facts similar to those involved in this case, and where there was a protest before payment of the tax, the Supreme Court of Illinois (*46 Ill.*, *374*), held that a State tax assessed against the shareholders of a national bank under the law of that State, cannot be recovered back merely because the mode of assessment provided by the law may have been illegal, the property upon which such tax was paid being subject in some mode to State taxation.

To the same effect in principle, are *City of Louisville v. Zanone, 1st Met. (Ky.), 151; Walker v. City of St. Louis, 15 Mo., 574; Christy's Adm'r v. City of St. Louis, 20 Mo., 145.*

It may be said that this decision in Illinois is in conflict with the opinion of this Court in *17 Mich.*, *479*. The main question discussed and decided in the Illinois case was not raised in the *17th Mich.* · But conceding that there is a conflict, this case in many of its features may be relied upon in determining some of the questions presented by the record in the case at bar,—viz: the payment was held to be voluntary, although made under protest; the Court refused to order a repayment of the money upon a similar state of facts, and held that there were no equities in favor of the plaintiff.

CAMPBELL, CH. J.

The plaintiff in error complains of a judgment rendered against him for money illegally collected of the defendants in error under color of a warrant from the Auditor General, issued for a specific tax under the law of 1867, charging specific taxes on national banks. The grounds of defense set up are that the payment was voluntary, and that a portion of the money was paid over into the State Treasury.

The case is freed from some of the difficulties which are occasionally met with in similar controversies, inasmuch as the process was not one which related to any of the ordinary duties of the plaintiff in error, as Sheriff of the county. It was issued under a special statute, applicable to but one subject, and showed on its face the source and extent of the authority asserted, by referring expressly to the legislative act. This was held to be unconstitutional in *Smith v. First National Bank of Tecumseh, 17 Mich. R., 479.* The warrant in this case was the same as in that, and the Sheriff of Lenawee County, acting under such an instrument, was held responsible in trespass for making a levy to collect it.

The writ, being bad upon its face, made any one seeking to enforce it a wrong-doer, and any money obtained under it being unlawfully obtained, he had no right to pay it into the Treasury, and such payment would not exonerate him. No relationship of principal and agent could exist under a law which was null, and the case cannot be likened to that of an innocent agent, who without personal fault receives money by mistake and transmits it to his principal. The immunity belonging to such transactions does not extend to wrong-doers.—*Story on Agency,* § *301,* and cases cited; *Steele v. Williams, 20 Eng. L. & Eq., 319; Snowden v. Davis, 1 Taunt., 359.*

The payment in this case cannot be regarded as voluntary in any proper sense. It was made under the threat of the immediate and effectual enforcement of the illegal warrant. The authorities are quite uniform that where such a demand is made under color of office and the payment is made under protest, the money may be recovered back, under all circumstances, from the person extorting it. The only question that appears to have been mooted is whether any protest is necessary,

21 MICH.—J³.

where the entire exaction is illegal on its face. The doctrine is beyond controversy that when the entire claim is unlawful, and the money is taken under color of public office, an action lies for its recovery.—*Steele v. Williams, 20 Eng. L. & Eq., 319; 2 Greenl. Ev., § 121 and notes; Morgan v. Palmer, 2 B. & C., 729; Story on Agency, § 307; Barnes v. Foley, 5 Burr., 2711; Frye v. Lockwood, 4 Cow., 454; Elliott v. Swartwout, 10 Pet., 137; Bend v. Hoyt, 13 Pet., 263.* The principal object of the notice or protest seems to be to warn the officer not to pay over the money. As the protest was made in the present case, there is no occasion to consider its legal necessity, in order to hold an officer who has paid over to another.

There is nothing in the authorities to warrant the argument that there must be any technical duress, or that the party imposed upon must resort either to violent or legal remedies to prevent the execution of the process, or to recover property he allows to be seized under it. No payment can be regarded as voluntary, and no one can be regarded as unduly negligent in making it, when the party sees fit to comply with the illegal demand, while protesting against its legality. He has a right to assume that the officer will do what he threatens to do, and no principle of public policy will compel him to use means of protection, when he prefers peaceful submission, and a resort to a civil action. The judgment must be affirmed with costs.

The other Justices concurred.