T. STEWART WHITE ET AL. v. THE TOWNSHIP OF MILLBROOK.

*Taxes—Payment of under protest—Protest does not give cause of action—*
*Illegality of the tax does—Protest determines time from which recovery*
*may be had, and when statutory limitation begins to run—*
*Does not make payment involuntary when no effort has*
*been made to collect—Statute permits action to be*
*brought, where payment is voluntary, for*
*causes mentioned in protest.*

1. Without considering in detail the various irregularities and grounds of illegality stated in the protest under which the taxes were paid by plaintiff (see opinion), the Court held that, under its decisions and the findings of fact in this case, the proceedings are sufficiently regular to sustain the tax.

2. It is not the protest that gives a protestant his cause of action to recover taxes thus paid, but the illegality of the tax assessed. The protest determines the *time* from which the taxes may be recovered, and *when* the limitation of the statutory right of action begins to run

for causes mentioned in the protest; but it does not make the payment involuntary when there has been no effort to collect, or demand for payment made, but permits the action to be brought, when the payment is voluntary, for the *causes* mentioned in such protest. [See authorities cited in opinion.]

Error to Mecosta. (Fuller, J.) Argued February 10, 1886. Decided April 15, 1886.

Assumpsit. Defendant brings error. Reversed. The facts are stated in the opinion.

*Frank Dumon*, for appellant.

*J. C. FitzGerald*, for plaintiff.

SHERWOOD, J. The plaintiffs were owners of certain real estate in the township of Millbrook, in the year 1882, on a portion of which they were engaged in lumbering. They were all non-residents of the township, but had an office for the transaction of their business located therein, on section 20, and which was occupied by their agent. This suit was brought by the plaintiffs in the county of Mecosta to recover for taxes paid by them to the township treasurer of township of Millbrook, which were assessed against them upon their said real estate and personal property in that township for the year 1882. The case was tried before Judge Fuller without a jury, who made written findings of all the questions of fact and of the law. He held the tax void, and rendered judgment for the plaintiffs against the defendant for the whole amount paid, with interest thereon from the time of payment, amounting in all to the sum of $1,823.21. No exceptions were taken to the finding of facts, and the case is now before us for review on error.

The assignments of error are as follows :

" *First*, the written finding of facts by the circuit judge in this cause does not support the judgment entered in said cause.

*Second*, that the said circuit judge erred in finding, as a conclusion of law from the facts found, that the taxes levied in the township of Millbrook for the year 1882 were abso-

lutely void, and that the plaintiffs were entitled to recover a judgment against the defendant, in the sum of $1,602.59, and interest on the same from January 16, 1883, at the rate of seven per cent."

The following is the substance of the finding of facts by the court.

That C. H. Clement was elected supervisor of the township of Millbrook in April, 1882, and qualified and acted as such supervisor until some time in July or August of that year.

That he took the assessment that spring, and made a "temporary assessment roll" of the real and personal property in the township, within the time required by law, and which was used by him and the board of review as the assessment roll for that year.

That Peter S. Decker and Lewis Carman were appointed members of the board of review, and acted as such.

That the supervisor presented said roll to the board of review for examination on Tuesday after the third Monday of May, and that their review was completed on the fourth Monday in May.

That the real and personal estate of plaintiffs was assessed upon said roll, and that Mr. Pryce, the agent of plaintiffs, appeared before the board, and asked for a reduction on certain parcels in the assessment, which was granted by the board, as announced by them. That the plaintiffs never had any notice of any other meeting of the board, or that the valuations were changed after that, and before the roll went into the hands of the treasurer for collection.

That Supervisor Clement removed from the township and resigned his office in July or August, and Charles Main was appointed and acted in his place the remainder of the year, and received from Clement the assessment roll thus made and prepared by him.

That at the annual meeting of the board of supervisors, in October, Supervisor Main presented the roll to the board for its action, and the board of supervisors returned it to Main to have the certificate of the board of review attached, and a

roll was returned to the board of supervisors, with the certificate attached, and was adopted by the board as the assessment roll of said township, as equalized by the board.

That the roll thus equalized was not the assessment roll presented to the board, nor the one acted upon by the township board. Neither was it a copy of the same, but a new roll, and differed from the original in several respects. It was not upon the same kind of blanks, contained a certificate of the board of review, and was indorsed, "Assessment roll of the township of Millbrook for the year 1882," and the valuation of more than 16 different descriptions of property had been changed. It contained several descriptions not mentioned in the original roll at all, and omitted several others which the original roll contained. That the original assessment roll is not footed ; the new one is.

That the plaintiffs were non-residents of said township, but had an office for the transaction of their business, located on section 20, within the geographical limits of school district No. 5. That they were assessed on the assessment roll of said township, which was subsequently carried onto the tax roll for said year, the "south half of the north-east quarter of section 21," and the valuation of the same fixed thereon at "400." That they were also assessed with personal estate, and its value fixed at "10,000." That said valuation of said personal estate was not placed on roll opposite the names of the plaintiffs, nor opposite an entry, " Personal Estate," but was placed opposite the said description of land in the column, "Value of Personal Estate," and on the tax roll the valuation of both the land and personal estate was set down in the column,"Value as Fixed by the Board of Review, 10,400," so that the two valuations were intermingled, and subsequently the taxes were spread on the tax roll upon such intermingled valuation, and a school tax assessed thereon in school district No. 2.

That said supervisor made a tax roll for said township for said year, and delivered the same to the township treasurer, which had annexed thereto the warrant of the supervisor for the collection of the same. That there was charged to

the plaintiffs on said tax roll a total of $1,602.59, taxes on the several descriptions of property assessed to them thereon.

That said tax roll was not a copy of the assessment roll of said township in the following particulars, viz.: The taxes were not extended or spread on the original assessment roll, but were on the new roll, made by the supervisor in October of that year, and equalized by the board of supervisors; that the certificates of the chairman of the board of supervisors and of the clerk of said board are attached to the tax roll, and do not appear attached to the original or new assessment roll, nor does the certificate of the supervisor appear attached to such original roll; that five or six descriptions appear on the original and new assessment rolls which are changed on the tax roll, and one description is assessed to plaintiff twice in the tax roll. Otherwise than herein specified, the new assessment roll and the tax roll were alike.

That on the sixteenth day of January, 1883, the plaintiffs paid the before-mentioned tax under protest signed by them. That the treasurer minuted the fact of such protest on the tax roll, and in the receipt given to plaintiffs for the taxes, and within thirty days thereafter the plaintiffs brought this suit; the protest being substantially as follows:

"*First.* The board of review of said township did not, after completing the review of the assessment roll for said township for said year, nor did a majority of said board, indorse thereon and sign a statement to the effect that the same was the assessment roll for said township for said year as provided by law.

"*Second.* The assessment roll of said township for said year, now in the office of the supervisor of said township, is not the assessment roll made by the supervisor of said township and acted upon and approved by the board of review of said township.

"*Third.* The tax roll now in the hands of the treasurer of said township is not a copy of the assessment roll of said township for the year 1882, with the taxes assessed thereon.

"*Fourth.* That one Charles Main, acting as supervisor, and one Peter S. Decker, unlawfully and illegally assuming to act as the board of review of said township, and without any power or authority of law, did, on or about the eleventh day

of October, 1882, certify and indorse on the assessment roll of said township of Millbrook as follows:

"'Assessment roll of the township of Millbrook for the year 1882, as approved by the board of review.

"'Dated October 11, 1882.

"'CHARLES MAIN, *Supervisor.*
"'PETER S. DECKER.
"'*Board of Review.*'

"That said assessment roll was not, before that date, certified to by either the supervisor of said township, or any member of the board of review.

"*Fifth.* That the supervisor of said township, on or about the first day of October, 1882, illegally, and without any power or authority, assumed to make another assessment roll for said township, entirely different from the one made by the supervisor and passed upon by the board of review at their regular meeting for that year.

"*Sixth.* That said supervisor unlawfully and fraudulently assumed to and did make and enter upon said pretended assessment roll certain changes in the assessment of said township, and fixed the valuation of certain property at different amounts from those fixed by the supervisor and board of review on the assessment roll of said town; that among the changes so made were" those hereinbefore stated and several others.

"*Seventh.* That said assessment of personal estate was not placed on the assessment roll of said township opposite the name of White, Friant & Co. and separate from the valuation of real estate, but was intermingled with the valuation of the S. ½ of the N. W. ¼ of section 21, said township, and so charged on the assessment and tax rolls of said township for said year.

"*Eighth.* The real and personal property assessed to White, Friant & Co., in the township of Millbrook, for the year 1882, was fraudulently valued by the supervisor and placed on the assessment roll of said township, and subsequently fraudulently fixed by the board of review at more than its true cash value, and greatly in excess of the property of residents of said township of proportionate value."

*Ninth.* That the amount of taxes spread for the year is in excess of the amount authorized by law.

*Tenth.* That the tax roll for 1882 in said township is illegal and void.

The court further finds that " the original assessment roll, so called, made by Clifton H. Clement, as supervisor of said township for the year 1882, and which was before the township board of review, and acted upon by them, as before stated in this finding, when it came into the possession of Charles Main, as the successor in office of the said Clifton H. Clement, was in that condition that it was deemed by said supervisor to be impossible for him to spread the taxes to be levied that year thereon, and that thereafter he, the said supervisor, made the copy of said assessment roll which is herein designated as the new roll, and which was the assessment afterwards presented to and equalized by the board of supervisors of said county, as hereinbefore stated, and that said supervisor spread the taxes thereon as stated in the findings."

The following is the finding upon the law :

"As conclusion of law, I find that the taxes levied in the township of Millbrook for the year 1882 were absolutely void, and the plaintiffs are entitled to recover against the defendant the sum of $1,602.59, and interest on the same from January 16, 1883, at seven per cent."

The exception taken is to this finding of the law. The record contains none of the testimony given in the case.

Nothing can be claimed for either side resulting from the change of incumbents in the office of supervisor, but whatever was done by Mr. Main must be regarded the same as it would have been had there been no change, and Clement had continued supervisor to the end of his term.

The tax sought to be recovered back the court finds was paid on the sixteenth day of January, 1883, by the plaintiffs. It does not appear anywhere in the record that there was duress, or levy threatened or made, to compel payment, or that the collector ever demanded or asked for the amount of the tax assessed, or any part thereof, before such payment was made. Counsel for defendant therefore claims that such payment was voluntary, and that plaintiffs cannot recover.

The statute made it the duty of the treasurer to call, during the month of January, upon the plaintiffs at their place of business and demand payment of the taxes assessed against.

the plaintiffs. No such demand, however, was made, and, without any effort, so far as the record shows, on the part of the treasurer to collect, the plaintiffs went to the treasurer, entered their protest, and paid the tax now claimed.

It is not the protest that gives the plaintiff his cause of action for the taxes paid, but the illegality of the tax assessed. The protest does no more than determine the time from which the taxes may be recovered, and when the limitation of the right to bring the action against the township begins to run for causes mentioned in the protest: *First Nat. Bank of Sturgis v. Watkins*, 21 Mich. 483; *People v. East Saginaw*, 40 Mich. 336.

It does not make the payment involuntary when there has been no effort to collect, or demand for payment made, but permits the action to be brought, when the payment is voluntary, for the causes mentioned in the protest: *Mitchell v. Chambers*, 43 Mich. 158; *Detroit v. Martin*, 34 Mich. 177.

The protest stated illegalities sufficient to invalidate the tax, and had they all been supported by the findings, the conclusion reached by the circuit judge would be irresistible.

We shall not attempt a consideration herein in detail of the various irregularities and grounds of illegality stated in the plaintiff's protest. We will only say that, under the several decisions of this Court and the findings in the case, we find no difficulty in holding the proceedings sufficiently regular to sustain the tax assessed against the plaintiffs.

It is not found that the alleged changes in the roll, as originally made and equalized, were fraudulently made; neither is it found that they were prejudicial to the plaintiffs, or that the assessment made against the plaintiffs was greater than a reasonably ratable proportion of the burden of taxation for the year 1882 should have been borne by them, or that the plaintiffs offered or tendered to the treasurer such amount for their taxes for the year 1882 as would have been legal and proper if correctly assessed. Under the facts found we think the assessment must be sustained: Cooley Taxation, 155, 565, 566; *Albany & Boston Min. Co. v. Auditor General*, 37 Mich. 394; *Case v. Dean*, 16 Mich. 38; *Stockle v.*

*Silsbee*, 41 Mich. 617; How. Stat. § 84, p. 1288; *Bird v. Perkins*, 33 Mich. 29; *Merrill v. Humphrey*, 24 Mich. 171; *Bell v. Ardis*, 38 Mich. 609.

The judgment must be reversed, and a judgment entered against plaintiffs for the costs of both courts, to be taxed.

The other Justices concurred.