AUDITOR GENERAL *v.* SAGE LAND ·&· IMPROVEMENT CO.

TAXATION—OMISSION OF TAXABLE PROPERTY—EFFECT ON VALIDITY OF TAX.

> The action of the auditor general in deeding to the State, as tax homestead lands, a large quantity of land in a certain township, under 1 Comp. Laws, § 3949, and the subsequent omission of such lands from taxation as belonging to the State, if unauthorized, did not invalidate the taxes assessed against the remaining lands in the township, though improperly increasing the tax imposed upon them; the action of the authorities having been taken in good faith, and under a misconstruction of the tax law.

Appeal from Ogemaw; Sharpe, J. Submitted October 10, 1901. Decided December 30, 1901.

Petition by Roscoe D. Dix, auditor general, for the sale of lands delinquent for taxes: On objections filed by the Sage Land & Improvement Company. From a decree for petitioner, respondent appeals. Affirmed.

*E. M. Harris*, Prosecuting Attorney, for petitioner.

*Hall & Brockway*, for respondent.

MOORE, J. In the year 1896, and for many years prior thereto, many lands in the township of Hill, in Ogemaw county, were delinquent for taxes, and had been bid off to the State for a consecutive period of more than three years, no application having been made to redeem or purchase

the same, when the township board of the township, by
resolution at a meeting held in December, 1896, requested
the auditor general and the commissioner of the state land
office to examine these lands for the purpose of placing
them on the tax homestead list, under sections 127 to 134,
inclusive, of Act No. 206 of the Public Acts of 1893, as
amended by Act No. 154 of the Public Acts of 1895.
Pursuant to such application and request, and acting on
the report of the examiner of said lands, the auditor gen-
eral did on the 25th day of October, 1897, deed the afore-
said lands (about 7,200 acres in all) to the State, as tax
homestead lands, advising the township clerk, the county
treasurer, and the supervisor of Hill township of his action;
and, when the assessment roll was made in the spring of
the year 1898, these lands were omitted, under section 130
of Act No. 206 of the Public Acts of 1893. The Sage
Land & Improvement Company, appellant, refused to pay
its taxes, and, on the hearing of the petition of the auditor
general, filed its objections to the taxes appearing against
its lands therein, for the reason that the action of the audi-
tor general in deeding the aforesaid lands to the State
October 25, 1897, under the provisions of section 127 of
Act No. 206 of the Public Acts of 1893, as amended by
Act No. 154 of the Public Acts of 1895, was unwarranted
and void, and that, by reason of such lands being omitted
from the roll of 1898, the respondent is called upon to pay
much more than its uniform share of the tax levy of that
year. The court on the 22d day of March, 1901, filed an
opinion in said cause sustaining the several taxes, interest,
costs, and charges appearing against the lands, and éntered
a decree therefor against such lands. The case is brought
here by the Sage Land & Improvement Company.

The position of the appellant, as stated by counsel, is as
follows:

"The Constitution provides that 'taxes shall be levied
on such property as shall be prescribed by law.' Article
14, § 11. 'All assessments hereafter authorized shall be
on property at its cash value.' Article 14, § 12. 'For the

purpose of taxation, real property shall include all lands within the State, and all buildings and fixtures thereon, and appurtenances thereto, except such as are expressly exempted by law.' Act No. 206, Pub. Acts 1893, § 2. It is the requirement of the Constitution and statute law that the burden of taxation shall be borne equally, to the extent that the officers of the State and municipality imposing the same are able to make it when following the law. It cannot be seriously contended that a tax unlawfully imposed upon exempt property can be made lawful by invoking the claim that the officers acted in good faith. If this is true as to exempt property, the same principle determines that a tax imposed upon assessable property through the exemption of other assessable property is illegal. A misconstruction of the law affords no claim to protection, however honest the officers may be. Acting within the limits of the Constitution, the power to tax is statutory; and whenever this power is successfully challenged by proofs, and no authority is found in the statute for the proceedings, they must fail. It has been the uniform rule of this court that, to render a tax lawful, it must be spread over the whole territory comprising the municipality imposing the levy, and equally over the whole assessable property therein, and a plea of good faith on the part of the officers making a mistaken assessment in this regard is of no avail,"—citing *Sears* v. *Cottrell*, 5 Mich. 273; *People* v. *Township Board of Salem*, 20 Mich. 474 (4 Am. Rep. 400); *Michigan Land & Iron Co.* v. *Township of Republic*, 65 Mich. 628 (32 N. W. 882); *Auditor General* v. *McArthur*, 87 Mich. 464 (49 N. W. 592); *Auditor General* v. *Prescott*, 94 Mich. 190 (53 N. W. 1058).

"A tax is void that is prejudicial or unwarranted, whether arising from want of lawful authority to impose it, or from illegal action in administering the law. Two things, at least, must concur to make the tax valid: (1) There must be a law that authorizes the tax; (2) there must be lawful proceedings in the administration of the law by the officers when imposing the authorized tax. If there is a failure in either of these regards, and the taxpayer is prejudiced thereby, he is entitled to relief; and it is immaterial that the officers, honestly, mistakenly, or in good faith, erroneously believed that the law warranted the unauthorized tax or proceedings. The mental attitude of the officer towards the law will not aid the taxpayer to discharge the unlawful imposition, or lessen his burden.

The court must do this,"—citing article 6, § 32, Const.
Mich.; article 14, § 1, Const. U. S.; *Connecticut Mut.
Life Ins. Co.* v. *Wood,* 115 Mich. 450 (74 N. W. 656);
and other cases.[1]

The circuit judge filed a written opinion in the case, a
part of which reads as follows:

"The respondent, the Sage Land & Improvement Com-
pany, filed objections to the making of a decree against
the lands owned by it in town 23 north, range 4 east
(township of Hill), as prayed for in the petition.   There
are many objections and numerous reasons assigned, but
it would seem that they all could be summarized in one,
viz., that the action of the auditor general in deeding to
the State a large portion of land in this township on Octo-
ber 25, 1897, under the provisions of section 127 of the tax
law of 1893, as amended, was unwarranted and void, and
that, by reason of these lands being omitted from the roll
of 1898, the respondent is called upon to pay much more
than its fair share of the tax levy of that year.

"It appears that there were, in 1897, 20,312 acres of
land in this township subject to taxation, and that 7,240
acres were deeded to the State.   Respondent owns about
one-half of the balance of the lands in the township.   It
also appears that the lands of respondent are quite similar
in quality and value to those deeded.   It is apparent that
its taxes have been largely increased by such action of the
auditor general.   There would seem to be no question but
that the action of the auditor general in deeding these
lands to the State was unwarranted and void.   The lands
had not been bid off to the State for a consecutive period
of more than three years, as required.   Neither were the
lands of the character or quality provided for.   There
would seem to be no necessity for further discussing this
question, as it is practically conceded by the State officers.

"The next question, and one I find much more difficulty
in solving, is as to the effect of such action on the tax rolls
of said township for succeeding years.   For, if it be held
that the taxes of respondent for the year 1898 are void by
reason of the omission of these lands from the assessment
roll of that year, then no valid tax can be assessed in the
township of Hill until such action of the auditor general

[1] Viz.: *Auditor General* v. *Pioneer Iron Co.,* 123 Mich. 521 (82
N. W. 260); *Hersey* v. *Board of Supervisors,* 16 Wis. 185 (82 Am.
Dec. 713); *Johnston* v. *City of Oshkosh,* 65 Wis. 473 (27 N. W. 320).

is rescinded, and these lands again assessed. It is not contended but that the auditor general acted in good faith in the proceedings which he took under section 127. Neither is it claimed that the supervisor or board of review acted fraudulently, or other than they believed to be in the due performance of their duty, in omitting these lands from the assessment roll. While objection is made to the application of the township board to have these lands examined, and to the report of the examiner, I should find, were it necessary to do so, that these were mere irregularities, and not sufficient to justify the avoidance of the tax. The erroneous construction of the law by the auditor general was the cause of the omission to assess these lands for the year 1898. And it might not be improper to add that such construction was that generally adopted by the bar of the State previous to the decision of the Supreme Court in *Connecticut Mut. Life Ins. Co.* v. *Wood*, 115 Mich. 444 (74 N. W. 656).

"There would seem to be no question, under the authorities, but that the fraudulent, or even intentional, omission of any considerable amount of either real or personal property from the assessment roll avoids the entire tax, unless it be possible from the record to determine the fair share which should be paid by the contesting party. In the case of such intentional omission, where no fraudulent motive is established, it has been held that such unlawful act in itself amounts to fraud in law. And in all of the cases cited by counsel for respondent it will be seen that the element of fraud was present. *Auditor General* v. *Prescott*, 94 Mich. 190 (53 N. W. 1058); *Solomon* v. *Township of Oscoda*, 77 Mich. 365 (43 N. W. 990); *Walsh* v. *King*, 74 Mich. 350 (41 N. W. 1080); *Auditor General* v. *McArthur*, 87 Mich. 457 (49 N. W. 592); *Auditor General* v. *Pioneer Iron Co.*, 123 Mich. 521 (82 N. W. 260). Experience teaches us that it is impossible to have the tax laws executed so as to prevent inequality and injustice. And where these results have been produced by favoritism or fraud, or intentional misconduct, the courts have always granted relief. But where none of these elements are present, and the action complained of is simply due to an error in judgment on the part of the official, in my opinion, no case for relief is made out. While it is a hardship to require respondent to pay more than its fair share of the tax levy of 1898, it only suffers in common with the owners of the other third of the lands in the township."

We do not feel as certain as did the circuit judge that these lands were improperly withdrawn from assessment. The record discloses that, as to some of them, the owners had not paid taxes since 1882, but had allowed them to be returned for nonpayment of taxes, and to be bid in by the State, year after year; and all of them had been bid in for a consecutive period of more than three years. It is very probable that, if the title of the State had been questioned in a direct proceeding, under the case of *Connecticut Mut. Life Ins. Co.* v. *Wood*, 115 Mich. 450 (74 N. W. 656), it would have been held invalid; but the record does not disclose that any steps have been taken by the former owners to vacate the decrees under which the State obtained title, and no effort may ever be made by any person having the right to do so to question the title of the State. The title, then, to these lands being in the State, was it not competent to exempt them from assessment? In Cooley, Tax'n (2d Ed.), 171, it is said:

"Every statute for the levy of taxes is, in a sense, a statute making exemptions; that is to say, it leaves many things untaxed which it would be entirely competent to tax if the legislature had deemed it wise or politic. One State will lay the burden on property only, another on property and corporations, another on property and the different kinds of business, and so on. In each case there is such selection of subjects as the legislative wisdom has determined upon, and the determination is conclusive. All subjects for which taxation is not provided are exempted, and the subjects selected are alone, for the time, taxable.

"When, however, the selections have been made, and the general rule determined upon, it has been customary for the legislature to make certain exemptions of either persons or property coming within the general rule, but which, for reasons of general policy, it is deemed wise not to tax. Some of these, such as the exemptions of household furniture, tools of trade, etc., and the limited personal property which very poor persons may be possessed of, are to be looked upon rather as in the nature of limitations of the general rule, than as exceptions from it; the taxation being only of all that is possessed over and beyond what has

been left out as absolutely needful to the owner's support.

\* \* \*

" Some things are always presumptively exempted from the operation of general tax laws, because it is reasonable to suppose they were not within the intent of the legislature in adopting them. Such is the case with property belonging to the State and its municipalities, and which is held by them for governmental purposes. All such property is taxable, if the State shall see fit to tax it; but to levy a tax upon it would render necessary new taxes to meet the demand of this tax, and thus the public would be taxing itself in order to raise money to pay over to itself, and no one would be benefited but the officers employed, whose compensation would go to increase the useless levy. It cannot be supposed that the legislature would ever purposely lay such a burden upon public property, and it is therefore a reasonable conclusion that, however general may be the enumeration of property for taxation, the property held by the State and by all its municipalities for governmental purposes was intended to be excluded, and the law will be administered as excluding it in fact."

In section 127, before cited, the legislature recognized the situation in which the State found itself in having lands which it had been compelled to buy in, year after year, still upon the assessment roll, and by the proposed legislation sought to obtain some relief. The action of the State authorities was a substantial compliance with the provisions of the law, and, speaking for myself, I do not think in this proceeding the appellant is in a situation to raise the question it seeks to raise here. I prefer, however, not to put the disposition of this case alone upon this ground. It appears clearly from the record that the assessing officer intended to assess all the property in his township which it was his duty to assess. He was advised by the State officers, whose advice it was his duty to follow, not to assess certain lands. He followed this advice. There is nothing to call in question either his good faith, or the good faith of the auditor general and the land commissioner, who undertook to carry out the provisions of the act passed by the legislature. No proceedings have ever been taken to review their action and

set it aside. Suppose an assessing officer, acting in the utmost good faith, under a mistaken view of the law, were to leave unassessed one description of land of little value; would that avoid the roll? And, if not, would the leaving off of five descriptions do so? We think the circuit judge reached a right conclusion; that the true rule is as follows:

"It has been decided in a number of cases that accidental omissions from taxation of persons or property that should be taxed, occurring through the negligence or default of officers to whom the execution of the taxing laws is intrusted, would not have the effect to vitiate the whole tax. The reasons for this conclusion are summarized in one of the cases as follows:

"'The execution of these laws is necessarily intrusted to men, and men are fallible,—liable to frequent mistakes of fact and errors of judgment. If such errors on the part of those who are attempting in good faith to perform their duties should vitiate the whole tax, no tax could ever be collected. And, therefore, though they sometimes increase improperly the burdens of those paying taxes, the rule which holds the tax not thereby avoided is absolutely essential to a continuation of government.' *Weeks* v. *City of Milwaukee,* 10 Wis. 264.

"It seems difficult to resist the force of this reasoning, and it applies to the case of a mistake of law with the same cogency as to the case of a mistake of fact. Indeed, where the omission has occurred through no purpose to evade or disregard official duty, the occasion which produced it seems wholly immaterial." Cooley, Tax'n (2d Ed.), 216.

The decree of the court below is affirmed.

MONTGOMERY, C. J., HOOKER and LONG, JJ., concurred. GRANT, J., did not sit.